<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DYNAJAH GREENE *et al.*, | |
| Plaintiffs, | Civil Action No. 21-14399 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| W■LLIAM LANCE *et al.*, | |
| Defendants. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendants Chief of Police Robert Stettner ("Stettner") and Town of Phillipsburg's ("Phillipsburg," and together with Stettner, "Defendants") motion to dismiss. (ECF No. 9.) Plaintiffs Dynajah Greene ("Greene") and Carrie Stepney ("Stepney," and together with Greene, "Plaintiffs") opposed (ECF No. 10), and Defendants replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in part and denies in part Defendants' Motion.

**I.      BACKGROUND**

Plaintiffs are two residents of Phillipsburg, New Jersey. Plaintiffs allege that William Lance ("Lance"), who at the time was a police officer employed by Phillipsburg, sexually harassed them while in uniform. (Compl. ¶¶ 10-18, ECF No. 1.) According to Greene, on multiple occasions, Lance winked, blew kisses, and even contacted her via cell phone. (*Id.* ¶ 12.) Lance's actions did not stop there, however. In August 2019, Greene was outside a Wawa convenience

store in Phillipsburg when Lance placed her hand on his penis and said, "Do you like what you feel?" (*Id.* ¶ 10.) Stepney's allegations are remarkably similar. In early March 2020, Stepney was at the same Wawa when Lance "touched her buttocks and then lifted her up and kissed her" without her consent. (*Id.* ¶ 16.)

Fed up with Lance's behavior, Greene posted on Facebook about her experiences with him. (*Id.* ¶ 13.) Several other women replied to the post, detailing their own interactions with Lance. (*Id.*) The post caught the attention of the Warren County Prosecutor's Office (the "Prosecutor's Office"). (*Id.* ¶ 14.) The Prosecutor's Office then contacted Greene who provided an interview with the County Detectives Special Victim's Unit. (*Id.*) Ultimately, the Prosecutor's Office criminally charged Lance with sexual misconduct and related offenses. (*Id.*)

On July 30, 2021, Plaintiffs sued Lance and Defendants. (*See generally id.*) Plaintiffs brought both 42 U.S.C. § 1983 and state law claims, alleging counts for (1) harassment and assault and battery against Lance, (2) supervisor liability against Stettner, (3) conspiracy against Stettner and Lance, (4) a *Monell* claim against Phillipsburg, (5) sexual misconduct, sexual assault, sexual battery, negligent and intentional infliction of emotional distress claims against Lance, and (6) a sexual harassment and gender discrimination claim under the New Jersey Law Against Discrimination ("NJLAD"). (Compl. ¶¶ 19-53.) Defendants now bring the instant motion to dismiss the claims against them.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for

failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.    DISCUSSION

### A.    Plaintiffs' § 1983 Supervisor Liability, Conspiracy and *Monell* Claims Fail.

Plaintiffs bring this action under 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The Court addresses each of Plaintiffs' claims in turn.

1.      **Plaintiffs Fail to Plausibly Allege Claims for Supervisor Liability and Conspiracy Against Stettner.**

Defendants argue that Plaintiffs' supervisor liability and conspiracy claims under § 1983 must be dismissed. Regarding the claim for supervisor liability, Defendants argue that Plaintiffs fail to plausibly allege facts that Stettner knew about or participated in Lance's wrongdoing. (Defs.' Moving Br. 5, ECF No. 9-1.) Likewise, Defendants argue that Plaintiffs allege no facts that Stettner participated in any conspiracy with Lance. (*Id.* at 6-7.)

Addressing the supervisor liability claim, Plaintiffs cannot rely solely on a *respondeat superior* theory of liability against a defendant for § 1983 liability. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). Instead, Plaintiffs must allege that a supervisor had personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"). The Third Circuit recognizes supervisor liability where a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 127 n.5 (3d Cir. 2010). (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)).

Here, Plaintiffs fail to plausibly allege any facts that Stettner participated in or directed Lance to sexually harass them. Nor does the Complaint include any hint that Stettner had knowledge of or acquiesced to Lance's conduct. (*See generally* Compl.) In the Complaint, Plaintiffs assert that Stettner "was aware of the numerous acts and complaints of sexual harassment" against Lance. (*Id.* ¶ 25.) These bare allegations, however, are not enough to sustain a claim of supervisor liability "because they are no more than conclusions." *Iqbal*, 556 U.S. at 679. For example, Plaintiffs do not allege any facts that Stettner was ever aware of Lance's conduct,

4

*e.g.*, how or when he was made aware. Accordingly, this Court must disregard the Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action." *Id.* at 678.

Plaintiffs' separate claim for conspiracy under § 1983 against Stettner is likewise deficient.[1] "To make out a § 1983 conspiracy claim, the plaintiff must make *specific* factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J. 1998) (emphasis added). Regarding the conspiracy claim, the Complaint is devoid of any facts plausibly alleging a conspiracy between Stettner and Lance. For illustration, Plaintiffs do not allege when the agreement to conspire occurred, or any other details to show that Stettner and Lance acted in concert to harass Plaintiffs.

Taking the Complaint in the light most favorable to Plaintiffs, the Complaint does not plausibly allege a § 1983 supervisor liability or conspiracy claim. Those claims, accordingly, are dismissed.

### 2. Plaintiffs Fail to Plausibly Allege a Claim for Municipal Liability Against Phillipsburg.

The Court next addresses Plaintiffs' *Monell* claim against Phillipsburg. Plaintiffs assert two separate theories for municipal liability: (1) Phillipsburg has a custom, policy, and/or practice of failing to investigate complaints of harassment and unwanted sexual contact, and (2) Phillipsburg failed to properly train, supervise, and discipline its officers regarding appropriate procedures for protecting constitutional rights. (Compl. ¶¶ 35-39.) Defendants argue that Plaintiffs' claim must be dismissed because Plaintiffs fail to plausibly allege that Phillipsburg has established a custom

---

[1] This claim is also pled against Lance, but he is not a moving party in this Motion.

of failing to fully investigate harassment and unwanted sexual contact or train its police officers. (Defs.' Moving Br. 8-11.)

In *Monell v. New York City Department of Social Services*, the Supreme Court held that a municipality or other local government may be subject to liability under § 1983. 436 U.S. 658, 691-92 (1978). Because local governments "are responsible only for 'their own illegal acts,'" they cannot be held vicariously liable under § 1983 for their employees' actions. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original). Thus, to establish municipal liability under § 1983, a plaintiff must prove that "action pursuant to official municipal policy" caused his injury. *Monell*, 436 U.S. at 691. In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). Specifically, Plaintiffs must demonstrate an "'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id.* (citing *Bielevicz*, 915 F.2d at 850.)

In addition, "[w]here the policy 'concerns a failure to train or supervise municipal employees,' liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S at 61 (*Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

Regarding Plaintiff's first municipal liability theory, the Complaint's allegations of a municipal policy, practice, or custom are, at best, conclusory. (*See compl.* ¶¶ 36-39.) Here, the Complaint alleges that when Greene posted on Facebook regarding Lance's harassment, multiple women commented on the post alleging similar incidents. (*Id.* ¶ 13.) But these allegations make no mention of any policy, custom and/or practice by Phillipsburg that suggest the municipality condoned Lance's behavior. In fact, the Complaint makes no mention of the municipality's knowledge of Lance's behavior before Greene's Facebook post. Indeed, Plaintiffs readily admit that after Greene made the post, she was contacted by the Prosecutor's Office and Lance was criminally charged with sexual misconduct and other offenses. (*Id.* ¶ 15.)

Nor does the Complaint provide any facts to sustain a *Monell* claim for failure to train and supervise. Fatal to this claim, Plaintiffs do not plausibly allege that Phillipsburg was deliberately indifferent to claims of sexual harassment. The Third Circuit has held that, to find municipal liability, plaintiff must show both knowledge of the incident or knowledge of a pattern of incidents, and circumstances such that the inaction communicated a message of approval. *See Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir.1997)). At best, the Complaint alleges a pattern of similar behavior by Lance, but the Complaint contains no details to plausibly allege that Phillipsburg had any knowledge of Lance's prior conduct. Moreover, Plaintiffs do not even allege that Phillipsburg failed to act once Greene's Facebook post became public. For these reasons, the Court dismisses Plaintiffs' *Monell* claim.

**B.    Plaintiffs Plausibly Allege a Claim Under the NJLAD for Public Accommodation Discrimination Against Phillipsburg.**

Finally, Defendants argue that Plaintiffs' claim under the NJLAD must be dismissed because the Complaint fails to allege Lance either acted within the scope of his employment as a police officer or that Lance's employment with Phillipsburg furthered his sexual harassment of

Plaintiffs. (Defs.' Moving Br. 12-15.) Plaintiff's NJLAD claim references Defendants generally. But the claim completely omits any factual allegations against Stettner. (Compl. ¶¶ 42-53.) The Court thus finds that the Complaint does not state a claim against Stettner for a NJLAD violation. (Defs.' Moving Br. 12-15.)

The NJLAD provides, in relevant part, "[a]ll persons shall have the opportunity to . . . obtain all . . . advantages . . . of any place of public accommodation . . . without discrimination . . . because of . . . sex." N.J. Stat. Ann. § 10:5-4. Courts readily affirm that the NJLAD evidences a broad remedial goal and, therefore, the statute is to be construed liberally. *Vandegrift v. Bowen*, No. 07-2623, 2009 WL 1913412, at *4 (D.N.J. June 30, 2009). To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, "(1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *Vergara v. Keyes*, No. 20-1460, 2020 WL 7778080, at *4 (D.N.J. Dec. 30, 2020) (quoting *Vandeusen v. Mabel Realty of Bordentown, LLC*, No. 12-0330, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012)). While the NJLAD does not specifically list sexual harassment as its own form of discrimination, "it is well-established that '[s]exual harassment is a form of sex discrimination that violates'" the NJLAD." *J.T.'s Tire Serv., Inc. v. United Rentals N. A., Inc.*, 985 A.2d 211, 215 (N.J. Super. Ct. App. Div. 2010) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 601 (1993)). In addition, "the discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD." *Vandegrift*, 2009 WL 1913412, at *3 (citing *Ptaszynski v. Uwaname*, 853 A.2d 288 (N.J. Super. Ct. App. Div. 2004)).[2]

---

[2] *See also Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *13 (D.N.J. Aug. 31, 2020) ("A 'police department—both the building and the individual officers—is a place of public accommodation.'")

The Court finds that this claim is plausibly pled against Phillipsburg. Importantly, claims under the NJLAD alleging sexual misconduct by officers with citizen victims are not unprecedented and courts have declined to dismiss claims against municipalities under a direct liability theory. *See id.* at *5 (declining to dismiss NJLAD claim that municipality "discriminated against women by failing to implement policies and procedures within its police department relating to sexual harassment of women"). In *Vandergrift*, plaintiff alleged that she was sexually harassed by one of the municipal defendant's police officers during and after a traffic stop. *Id.* at *1. The plaintiff subsequently filed suit, alleging several claims, including an NJLAD claim. *Id.* That court found that the allegations sufficiently pled that the police officer's conduct would not have occurred but for her gender and was severe or pervasive enough to make a reasonable woman believe that the conditions are altered and the environment is hostile or abusive. *See id.* (quoting *Lehmann*, 626 A.2d at 453-54 (alterations in original).

Applying these principles here, the Court finds that Plaintiffs adequately plead a claim for public accommodation discrimination under the NJLAD at this stage.[3] Plaintiffs plead that Lance harassed them because of their sex. (Compl. ¶¶ 47-49.) They also plausibly allege that Lance treated other women in the same manner and that Phillipsburg failed to either deter or prevent Lance's harassment of multiple women. (*Id.* ¶¶ 10, 13, 16, 48.) Moreover, it is readily apparent on the face of the Complaint that a reasonable woman would believe that she was subjected to a hostile or abusive environment. Importantly, Plaintiffs do also allege that Lance engaged in a

---

[3] To avoid confusion, claims under the NJLAD are not subject to the deliberate indifference standard that *Monell* claims are subject to. *Vandegrift*, 2009 WL 1913412, at *4 (D.N.J. June 30, 2009) (finding that the New Jersey Supreme Court "unambiguously rejected" the deliberate indifference standard's application to NJLAD public accommodation claims by adopting the *Lehmann* test.); *See also Colombo v. The Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-785, 2016 WL 6471013, at *3 (D.N.J. Oct. 31, 2016) (dismissing Plaintiff's *Monell* claim but allowing NJLAD public accommodation claim to proceed to summary judgment).

pattern of behavior with Plaintiffs and other women. *Cf. N.W. v. Greater Egg Harbor Reg'l High Sch. Dist.*, 2018 WL 6332247, at *4 (N.J. Super. Ct. App. Div. Dec. 5, 2018) ("We decline to read [NJLAD] as imposing strict or vicarious liability on an employer for a single incident of an unauthorized comment by its employee . . . where there is no actual or constructive notice that the employee has exhibited discriminatory conduct in the past.").

Even under a theory of vicarious liability, the Court declines to dismiss at this stage. Defendants rely heavily on the Third Circuit's decision in *Yucis v. Sears Outlet Stores, LLC*, to argue Plaintiff's NJLAD claim should be dismissed. (Defs.' Moving Br. 12-15, ECF No. 9-1.) In *Yucis*, the plaintiff sued Sears under the NJLAD, alleging that a Sears manager made inappropriate comments to her during her visit to the department store. 813 F. App'x 780, 782 (3d Cir. 2020). Sears, however, moved to dismiss under the theory that the plaintiff had not pled facts to allege vicarious liability for the manager's harassment. *Id.* The district court agreed and dismissed the plaintiff's claim. *Id.* On appeal, the Third Circuit affirmed, finding that in NJLAD cases requesting monetary relief, the agency principles set out in Restatement § 219 apply to public accommodations harassment cases. *See id.* at 784. The Restatement imposes vicarious liability only if any of the following five tests are satisfied:

> (1) the employee was 'acting in the scope of [his] employment;' (2) the employer 'intended the conduct or the consequences;' (3) the employer 'was negligent or reckless;' (4) the employee's 'conduct violated a non-delegable duty of the [employer];' or (5) the employee 'purported to act or to speak on behalf of the [employer] and there was reliance upon apparent authority, or he was aided in accomplishing the [illegal act] by the existence of the [employment] relation.

*Id.* at 785(citing Restatement §§ 219(1), (2)(a)–(d)) (alterations in original)). Defendants assert that the present matter is factually similar to *Yucis* and this Court should dismiss. (Defs.' Moving Br. 14.) This Court disagrees.

10

While in *Yucis* the Third Circuit found that none of the Restatement tests were satisfied, that is not presently the case before this Court. *See Yucis,* 813 F. App'x at 784-87. Specifically, Plaintiffs plausibly allege that Lance acted with apparent authority or was at least aided in his conduct by being a police officer. (Compl. ¶¶ 10, 15.) In *Yucis*, the Third Circuit noted that "for an employee to be aided by his employment in committing a wrongful act, he must have taken advantage of some special mechanism afforded to him by his employment. . . [o]r the employment must have provided the employee a position of special authority making the victim particularly vulnerable to the wrongful act." *Yucis*, 813 F. App'x at 786.

Here, the Court finds that Lance was in a position of special authority that made Plaintiffs particularly vulnerable to his sexual harassment. This is because Lance was a police officer and in uniform when he sexually harassed Plaintiffs. *Yucis*, in fact, cites to a case bearing remarkably similar circumstances. *Id.* (citing *Doe v. Forrest* for the proposition that "sheriff's deputy was aided by his employment in coercing a civilian into a sexual act because the deputy's position gave him 'unique access to a citizen who is depending upon the law enforcement officer for protection'); *see also Doe v. Forrest*, 853 A.2d 48, 61 (Vt. 2004) (collecting cases alleging vicarious liability in sexual assault claims involving officers). Keeping in mind the remedial purpose of the NJLAD, and its liberal application, the Court finds it prudent to address this claim on summary judgment.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part Defendants' Motion. It will issue an order consistent with this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

11